J-S24012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAESEAN BERNARD SMITH | |
| Appellant | No. 2318 EDA 2014 |

Appeal from the Judgment of Sentence April 21, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0004021-2013

BEFORE:  GANTMAN, P.J., ALLEN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED JULY 08, 2015**

Appellant, Daesean Bernard Smith, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his open guilty plea to burglary, conspiracy to commit burglary, two counts of robbery, two counts of conspiracy to commit robbery, four counts of kidnapping for ransom, four counts of conspiracy to commit kidnapping for ransom, four counts of kidnapping to facilitate a felony, four counts of conspiracy to commit kidnapping to facilitate a felony, criminal attempt (theft), conspiracy to commit theft, criminal attempt (theft by extortion), conspiracy to commit theft by extortion, four counts of false imprisonment, four counts of conspiracy to commit false imprisonment, persons not to

possess firearms, and possessing instruments of crime.[1]     We affirm

Appellant's convictions but vacate and remand for resentencing.

In its opinion, the trial court set forth the relevant facts and procedural

history of this case.  Therefore, we have no reason to restate them.[2]

Appellant raises two issues for our review:

> WHETHER THE TRIAL COURT ERRED IN DENYING
> [APPELLANT] THE RIGHT TO WITHDRAW HIS GUILTY
> PLEA?
>
> WHETHER THE TRIAL COURT DENIED [APPELLANT] OF HIS
> RIGHT TO [A] FAIR TRIAL?

(Appellant's Brief at 4).[3]

_____

[1] 18 Pa.C.S.A. §§ 3502(a)(1); 903 (3502(a)(1) related); 3701(a)(1)(ii) and
(a)(1)(iii); 903 (3701(a)(1)(ii) and (a)(1)(iii) related); 2901(a)(1); 903
(2901(a)(1) related); 2901(a)(2); 903 (2901(a)(2) related); 901 (3921
related); 903 (3921 related); 901 (3923 related); 903 (3923 related); 2903;
903 (2903 related); 6105; 907, respectively.

[2] The correct citations for the statutes for the offenses of kidnapping of a
minor for ransom and kidnapping of a minor to facilitate a felony are 18
Pa.C.S.A. § 2901(a.1)(1) and 18 Pa.C.S.A. § 2901(a.1)(2), respectively.
The Commonwealth initially charged Appellant with these crimes at six
counts but requested the court to enter *nolle prosequi* as to these six counts
(not seven counts, as stated in the court's opinion) prior to Appellant's guilty
plea.   Additionally, the Commonwealth did not charge Appellant with
conspiracy to commit persons not to possess firearms or conspiracy to
commit possessing instruments of crime, and Appellant did not plead guilty
to those crimes.

[3] Appellant makes no separate argument as to his second issue on appeal.
Instead, Appellant contends that the court's denial of his motion to withdraw
his guilty plea also deprived Appellant of his right to a full and fair trial.
Thus, we address Appellant's issues together.

"At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty."  Pa.R.Crim.P 591(A).  Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, a pre-sentence request should be liberally allowed.  **Commonwealth v. Forbes**, 450 Pa. 185, 190, 299 A.2d 268, 271 (1973).  "If the trial court finds 'any fair and just reason', withdrawal of the plea before sentence should be freely permitted, unless the prosecution has been 'substantially prejudiced.'"  **Id.** at 191, 299 A.2d at 271.  Our Supreme court recently modified what had been increasingly interpreted as a bright-line rule regarding pre-sentence requests to withdraw a plea:

> Presently, we are persuaded by the approach of other jurisdictions which require that a defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea.  …  More broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice.  The policy of liberality remains extant but has its limits, consistent with the affordance of a degree of discretion to the common pleas courts.

**Commonwealth v. Carrasquillo**, ___ A.3d ___, 2015 WL 3684430 at **\*8** (Pa. June 15, 2015) (holding there is no *per se* rule regarding pre-sentence requests to withdraw pleas; court should consider plausibility, sincerity, motivation, and timing of request; courts must also consider whether

- 3 -

allowing withdrawal of plea will prejudice Commonwealth). Thus, the decision to allow or deny a pre-sentence motion to withdraw a guilty plea rests within the sound discretion of the trial court absent substantial prejudice to the Commonwealth. *See generally id.*

After a thorough review of the record, the briefs of the parties, the applicable law, and the reasoned opinion of the Honorable Albert J. Cepparulo, we conclude Appellant's issues merit no relief. The trial court opinion discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed September 5, 2014, at 10-15) (finding: Appellant's assertion of innocence was questionable; court believed Appellant engaged in contrived plot to withdraw guilty plea as direct result of learning that Commonwealth's key witness/victim (Ms. Gasden) had died and would be unavailable to testify at trial;[4] record showed Appellant possessed ulterior motive for request to withdraw guilty plea; further, permitting Appellant to withdraw his plea would substantially prejudice Commonwealth; Ms. Gasden died after Appellant had entered guilty plea and Appellant was aware of this fact; Ms. Gasden was very cooperative with police throughout investigation, and Commonwealth had total confidence in her testimony; defense intended

---

[4] Appellant pled guilty on October 22, 2013. Ms. Gasden died on December 6, 2013. On December 17, 2013, the date originally scheduled for sentencing, Appellant made an oral motion to withdraw his guilty plea. Appellant admitted he learned of Ms. Gasden's death before moving to withdraw his plea.

to challenge at trial credibility of other witness/victim, Ms. Jones, as actually having participated in hostage events (not victim of hostage events); Ms. Gasden is now unavailable to corroborate Ms. Jones' account of events; due to overwhelming prejudice to Commonwealth, denial of Appellant's motion to withdraw plea, made for first time at initially scheduled sentencing hearing, was proper under facts of case). Accordingly, we affirm the court's denial of Appellant's pre-sentence motion to withdraw his guilty plea on the basis of the trial court's opinion.

Nevertheless, we are mindful of the United States Supreme Court's decision in **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), in which the Court expressly held that any fact increasing the mandatory minimum sentence for a crime is considered an element of the crime to be submitted to the fact-finder and found beyond a reasonable doubt. **Id.** Here, the court imposed a mandatory minimum ten (10) year sentence for Appellant's burglary conviction under 42 Pa.C.S.A. § 9714 (sentences for second and subsequent offenses), and a mandatory minimum five (5) year sentence for one of Appellant's first-degree robbery convictions under 42 Pa.C.S.A. § 9712 (sentences for offenses committed with firearms). Consequently, we elect to review the legality of Appellant's sentence sua sponte. **See Commonwealth v. Edrington**, 780 A.2d 721 (Pa.Super. 2001) (explaining challenge to application of mandatory minimum sentence is non-waiveable challenge to legality of sentence, which

this Court can raise *sua sponte*, assuming jurisdiction is proper).

Section 9714 sets forth a mandatory minimum sentence of ten (10) years' imprisonment where a defendant has previously been convicted of a crime of violence. **See** 42 Pa.C.S.A. § 9714(a). Section 9714(d) of this statute states that its provisions shall not be an element of the crime and applicability of the statute shall be determined by the court at sentencing by a preponderance of the evidence. 42 Pa.C.S.A. § 9714(d). Section 9712 sets forth a mandatory minimum sentence of five (5) years' imprisonment where a defendant has been convicted of a crime of violence if the person visibly possessed a firearm or a replica of a firearm that placed the victim in reasonable fear of death or serious bodily injury during the commission of the offense. **See** 42 Pa.C.S.A. § 9712(a). Section 9712(b) of this statute states that its provisions shall not be an element of the crime and applicability of the statute shall be determined by the court at sentencing by a preponderance of the evidence. 42 Pa.C.S.A. § 9712(b).

In **Commonwealth v. Newman**, 99 A.3d 86 (Pa.Super. 2014) (*en banc*), this Court addressed the constitutionality of a mandatory minimum sentencing statute containing language similar to Section 9714(d) and Section 9712(b). Relying on **Alleyne**, **Newman** held that Section 9712.1 (sentences for certain drug offenses committed with firearms) can no longer pass constitutional muster as it "permits the trial court, as opposed to the jury, to increase a defendant's minimum sentence based upon a

preponderance of the evidence that the defendant was dealing drugs and possessed a firearm, or that a firearm was in close proximity to the drugs." *Newman, supra* at 98. This Court further held that the subsections of Section 9712.1 are so "essentially and inseparably connected" that severance of the statute is not possible, rendering the entire statute unconstitutional. *Id.* at 102. Thus, this Court vacated Newman's sentence for possession of a controlled substance with the intent to deliver and remanded for resentencing without imposition of the mandatory minimum under Section 9712.1.[5] *See also Commonwealth v. Valentine*, 101 A.3d 801 (Pa.Super. 2014) (extending logic of *Alleyne* and *Newman* to Sections 9712 and 9713 and holding those sections are likewise unconstitutional insofar as they permit automatic increase of defendant's sentence based on preponderance of evidence standard).

The *Alleyne* Court carved out a narrow exception where a defendant's prior conviction is the "fact" triggering application of a mandatory minimum sentence. *Alleyne, supra* at ___ n.1, 133 S.Ct. at 2160 n.1, 186 L.Ed.2d at ___ n.1. *See also Commonwealth v. Reid*, ___ A.3d ___, 2015 PA Super 135 (filed June 9, 2015) (explaining *Alleyne* did not overturn prior precedent that prior convictions are sentencing factors and not elements of

---

[5] This Court also made clear that *Alleyne* is subject to limited retroactivity; in other words, *Alleyne* is applicable only to criminal cases still pending on direct review. *Id.* at 90. Because Newman's case was still pending on direct appeal, the holding in *Alleyne* applied.

offenses; because Section 9714 provides mandatory minimum sentences based on prior convictions, that statute is not unconstitutional under **Alleyne**; court's imposition of mandatory minimum sentence under Section 9714 was lawful); **Commonwealth v. Miller**, 102 A.3d 988, 995 n.5 (Pa.Super. 2014) (explaining fact of prior conviction does not need to be submitted to fact-finder and found beyond reasonable doubt; **Alleyne** does not prohibit mandatory minimum sentence based on fact of prior conviction).

In this case, the court imposed a ten (10) year mandatory minimum sentence for Appellant's burglary conviction under 42 Pa.C.S.A. § 9714 (sentences for second and subsequent offenses), and a five (5) year mandatory minimum sentence for one of Appellant's first-degree robbery convictions under 42 Pa.C.S.A. § 9712 (sentences for offenses committed with firearms). With respect to Appellant's mandatory minimum sentence for his burglary conviction, the record shows Appellant had a prior conviction for first-degree robbery in October 2009, for which Appellant received a sentence of three and one-half (3½) to seven (7) years' imprisonment, plus four (4) years' probation. Because the court imposed the ten (10) year mandatory minimum sentence based on Appellant's prior conviction of a crime of violence, the court's imposition of the mandatory minimum sentence under 42 Pa.C.S.A. § 9714 was lawful. **See Alleyne, supra**; **Reid, supra**; **Miller, supra**. **See also** 42 Pa.C.S.A. § 9714(g) (defining first-degree robbery as "crime of violence" for purposes of statute).

Regarding the mandatory minimum sentence related to Appellant's robbery conviction,[6] the record makes clear Appellant possessed a gun throughout the events at issue. Specifically, Appellant and one of his cohorts held the victims hostage at gunpoint for approximately nine hours during the evening of April 21, 2013 into the morning of April 22, 2013; on the morning of April 22, 2013, Appellant and his cohorts forced one of the victims to attempt to withdraw approximately $80,000.00 from a PNC Bank. Notwithstanding Appellant's guilty plea to these events, based on this Court's decision in **Newman** and its progeny that Section 9712 is unconstitutional in its entirety, the trial court's imposition of the mandatory minimum sentence under that statute was unlawful. **See Newman, supra**; **Valentine, supra**. Accordingly, we affirm Appellant's convictions, but we vacate the judgment of sentence and remand for resentencing without imposition of the mandatory minimum sentence under 42 Pa.C.S.A. § 9712.

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

_____

[6] The court imposed the mandatory minimum sentence for Appellant's robbery conviction at Count 3. **See** 18 Pa.C.S.A. § 3701(a)(1)(ii) (explaining person is guilty of robbery if, in course of committing theft, he threatens another with or intentionally puts him in fear of immediate serious bodily injury). This first-degree robbery conviction constitutes a "crime of violence" for purposes of Section 9712. **See** 42 Pa.C.S.A. § 9712(a) (referring to Section 9714(g) for definition of crimes which constitute crimes of violence). **See also** 42 Pa.C.S.A. § 9714(g).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/8/2015</u>

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :      No. CP-09-CR-0004021-2013
     :      2318 EDA 2014

           vs.      :

     :

DAESEAN SMITH      :

## OPINION

## I.    INTRODUCTION

Appellant/Defendant Daesean Smith appeals to the Superior Court of Pennsylvania from this Court's denial of his motion to withdraw his guilty plea and judgment of sentence. We file this Opinion pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(a).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Defendant's entry of an open guilty plea to the conspiracy to commit and ultimate commission of a home invasion robbery of four individuals and three (3) children which lasted approximately nine (9) hours in Bristol Township, Bucks County.[1]

The District Attorney recited the facts on the record at Defendant's guilty plea hearing that took place on October 22, 2013, as follows:

> The affiant is Detective Mike Slaughter from Bristol Township. On April 22nd, 2013, at about 10:15 a.m., police were called to the PNC Bank in Bristol Borough regarding a customer in danger and his family and friends being held hostage in Bristol Township. The customer was Dwayne Stancil, who recently had received a life insurance award after his mother had died. He reported to the bank teller that he was being forced to withdraw approximately $80,000. At that time the bank employee permitted Mr. Stancil to withdraw approximately $1,500, and police were notified.
>
> Police coordinated officers and responded to the Levittown Trace Apartments at 3000 Ford Road in Bristol Township, Bucks County. Mr. Stancil and Ms. Kendra

---

[1] This case was consolidated with those of <u>Commonwealth v. Orlando McNeil</u>, Case No. CP-09-CR-0004023-2013 and <u>Commonwealth v. Dennis Redding</u>, Case No. CP-09-CR-0004021-2013.

Jones were having cell phone contact with one or more of the suspects. The information given to police was that two subjects were armed with handguns inside of Unit C2 and demanding the money from the bank as ransom.

Officers O'Brien and Durle were driving an unmarked car, and as they arrived in Levittown Trace, a black SUV pulled into the C lot entrance. A female, later identified as Ms. Jones, exited the SUV. The SUV proceeded through the complex near the fence line where two suspects, later identified as Dennis Redding and Daesean Smith, got to the SUV. They noticed the police officers approaching and then fled on foot. Police observed one fleeing suspect drop a black backpack.

The SUV, which was driven by Mr. McNeil, was detained. The two suspects fleeing were apprehended after a foot chase with assisting units and a K-9 unit checking the area. In the area police recovered two handguns along the flight path of the two suspects. Also recovered were the victims' cell phones. These two handguns were held by Mr. Redding and Mr. Smith while inside of the apartment complex and used to threaten the victims...

Ms. Gasden positively identified Mr. Redding as having been one of the two suspects that barged into C2, duct taped the adult victims, made the victims strip their clothes and held them hostage for approximately nine hours until the bank transaction had occurred.

...The affiant used video surveillance from the business next to the Levittown Trace Apartments, which was the 4Storage business. Video surveillance showed the two suspects just before 10:00 a.m. near a dumpster.

At that location the affiant found a pair of rolled up brown cotton work gloves under a parked vehicle. Arresting officers also recovered the driver's license of the victim from the defendants. Officers also recovered a roll of duct tape, a torn piece of duct tape from inside the apartment.

Officer Eisenhauer and Detective Slaughter interviewed Mr. McNeil. Mr. McNeil explained in detail that he knew the victim, Mr. Stancil, and he thought he would have two or three stacks on him and more inside, referring to money... Defendant stated that he did pick up Mr. Smith and Mr. Redding in Philadelphia. He stated that he, Mr. Smith and Redding had planned to lure Mr. Stancil to the Glen Hollow Apartments to rob him, but Mr. Stancil refused to leave the Levittown Trace Apartments. He explained that he then dropped off Mr. Smith and Redding to rob Mr. Stancil. The defendant stated that he knew -- at that point knew nothing of the insurance payout, but subsequently he did learn once Mr. Redding and Mr. Smith were inside the apartment.

...

...Ms. Jones' children were present at the time of the robbery and the home invasion. I believe their ages were I think it was one, three and five... I know they were all very young. But they were present at the time and throughout the night.

(N.T., 25-29, 10/22/2013.) Defendant admitted at the guilty plea hearing that the facts were a true and fair summary of what occurred. (N.T., 29, 10/22/2013.)

On April 23, 2013, Defendant was charged with Burglary,[2] Robbery- Threaten Immediate Serious Injury,[3] Robbery- Commit or Threaten to Commit a First or Second Degree Felony,[4] four (4) counts of Kidnapping for Ransom,[5] four (4) counts of Kidnap to Facilitate a Felony,[6] three (3) counts of Kidnapping of Minor- Ransom/Hostage,[7] three (3) counts of Kidnapping of Minor- Facilitate Felony/Flight,[8] seven (7) counts of False Imprisonment,[9] Possession of a Firearm,[10] Possession of an Instrument of Crime,[11] and Conspiracy[12] to commit all of the foregoing crimes. Defendant was also charged with Conspiracy to Commit Theft by Unlawful Taking[13] and Conspiracy to Commit Theft by Extortion.[14] At the preliminary hearing, the substantive charges of Theft by Unlawful Taking and Theft by Extortion were added. However, the Information reflects that these charges were later changed to Criminal Attempt to commit same, pursuant to 18 Pa.C.S. § 901(a).

On July 15, 2013, Defendant filed a pro se Motion for Change of Appointed Counsel.

---

[2] 18 Pa.C.S. § 3502(a)(1).
[3] 18 Pa.C.S. § 3701(a)(1)(ii).
[4] 18 Pa.C.S. § 3701(a)(1)(iii).
[5] 18 Pa.C.S. § 2901(a)(1).
[6] 18 Pa.C.S. § 2901(a)(2).
[7] 18 Pa.C.S. § 2901(a.1).
[8] 18 Pa.C.S. § 2901(a.2).
[9] 18 Pa.C.S. § 2903(a).
[10] 18 Pa.C.S. § 6105(a)(1).
[11] 18 Pa.C.S. § 907(a).
[12] 18 Pa.C.S. § 903(c).
[13] 18 Pa.C.S. § 903(c) § 3921(a).
[14] 18 Pa.C.S. § 903(c) § 3923(a).

On August 14, 2013, the Bucks County District Attorney's Office filed a Notice of Mandatory Minimum Sentence case pursuant to 42 Pa.C.S. § 9714 (Sentences for second and subsequent offenses).

On October 22, 2013, Defendant entered into an open plea agreement in which the Commonwealth agreed to *nolle pros* all seven (7) counts of Kidnapping of Minor, three (3) counts of False Imprisonment, and Conspiracy to Commit same. Appellant plead guilty to the remaining charges. There was no agreement regarding sentencing.

During the guilty plea colloquy, Defendant testified that he understood he was waiving his right to a trial by a jury or a waiver trial. (N.T., 4-5, 10/22/2013). He indicated he understood that he had a right to present evidence in his defense at such a trial. (N.T., 4, 10/22/2013.) Further, he stated he understood he was pleading guilty to all of the above charges, and we explained the elements of each in turn. (N.T., 7-19, 10/22/2013.) Further, we also informed Defendant of the maximum penalties he could face on each charge. (N.T., 17-19, 10/22/2013.) Defendant also testified that no one was threatening or forcing him into pleading guilty and he was pleading guilty because he was guilty of the offenses. (N.T., 22, 10/22/2013.) He stated he understood he could be sentenced on one or more of the offenses and that this Court could impose multiple sentences consecutively or concurrently. (N.T., 19-20, 10/22/2013.) Furthermore, he stated he understood the two mandatory minimum sentences that applied in this case. (N.T., 31-33, 10/22/2013.) Defendant stated he understood everything he was informed of on this date. (N.T., 22, 10/22/2013.) The sentence was deferred for a pre-sentence investigation. (N.T., 34-35, 10/22/2013.) [15]

---

[15] Defendant later admitted that the night prior to his trial date, on which he entered a guilty plea, he was provided Thorazine from another inmate to "help him sleep" as he was nervous. (N.T., 13, 2/20/2014.) He stated this did not affect his ability to understand. (N.T., 14, 2/20/2014.)

On December 17, 2013, the date his sentencing was originally scheduled for, Defendant made an oral motion to withdraw his guilty plea, alleging he was not guilty of the charges and wanted a jury trial. This motion was continued in order to allow time for the District Attorney to respond. Defendant also made a motion to remove his court appointed attorney, Harry Cooper, Esquire, which we denied.

The District Attorney filed a written response to Defendant's oral motion to withdraw his guilty plea on December 23, 2013, arguing the Commonwealth would suffer substantial prejudice if Defendant was permitted to withdraw his guilty plea. Defendant responded in writing on January 6, 2014, asserting substantial prejudice did not exist.

Two hearings were held on this motion on January 23, 2014 and February 20, 2014, respectively. The following evidence was submitted during these hearings. All four "main" complaining witnesses in this case- Mr. Dwayne Stancil, Mr. Franklin Talley, Ms. Kendra Jones, and Ms. Quitrina Gasden- were present to testify on the day the trial was scheduled.[16] (N.T., 9, 23, 24-25, 1/23/2014.) One of the complaining witnesses, Mr. Stancil, had two open criminal cases that arose following the entry of the guilty plea. (N.T., 9-10, 1/23/2014.) Prior to this, Mr. Stancil was cooperative. (N.T., 27, 1/23/2014.) At that time, he was represented by the Bucks County Public Defender's Office, however, a conflict existed and new counsel needed to be appointed.[17] (N.T., 10, 1/23/2014.) The Public Defender informed the District Attorney that he was not to ask any questions of Mr. Stancil regarding this case. (N.T., 59, 1/23/2014.) As of the hearing on February 20, 2014, new counsel, John J. Fioravanti, Jr., was appointed and it was established that Mr. Stancil would cooperate if Defendant was permitted to withdraw his guilty

---

[16] Mr. Talley was in custody in Bucks County. (N.T., 25, 1/23/2014.) In addition to the complaining witnesses, witnesses from PNC bank and two separate Walmart stores were present on the first trial listing. (N.T., 25-26, 1/23/2014.)
[17] Mr. Stancil testified at the preliminary hearing. (N.T., 12-13, 1/23/2014.)

plea. (N.T., 4, 2/20/2014.) Another complaining witness, Mr. Talley, even prior to the first listing of the case communicated to his court appointed attorney Sharif Abaza that he was not willing to testify because he claimed he had no information regarding the incident. (N.T., 10-11, 15-17, 1/23/2014.) Mr. Abaza testified that Mr. Talley's position had not changed by the time of this hearing. (N.T., 16-17, 1/23/2014.) Mr. Talley was concerned about a pending charge that "he believes he is innocent of" and he "appears to have some resentment [towards] the Commonwealth." (N.T., 19, 1/23/2014.) Ms. Jones was cooperative at the time the case was first called for trial. (N.T., 27, 1/23/2014.) However, it is important to note that co-Defendant McNeil gave a statement to police that Ms. Jones was involved in the conspiracy to commit the crimes charged and, therefore, Ms. Jones' credibility was undoubtedly an issue. (N.T., 63-65, 1/23/2014.)

Most significantly, Ms. Gasden died on December 6, 2013 after Defendant entered into a guilty plea but prior to the scheduled sentencing hearing. (N.T., 13, 22-23, 1/23/2014; See Exh. C-1.) Ms. Gasden suffered from significant health problems, which Detective Slaughter became aware of in September of 2013 after the incident. (N.T., 26, 52-54, 1/23/2014.) She was present for the preliminary hearing on October 21, 2013 but did not testify and there was no deposition taken of her. (N.T., 23-24, 1/23/2014.) No deposition was taken because, according to Detective Slaughter, it was discussed, however, he "thought she was doing better than she was." (N.T., 54, 1/23/2014.) Detective Slaughter, the affiant on this case, testified that he maintained constant contact with Ms. Gasden as the case progressed, and she met with him at the Bristol Township Police Department (BTPD) three (3) or four (4) times and also met with him and the District Attorney at the District Attorney's Office prior to the trial date. (N.T., 26-27, 1/23/2014.) She

remained wholly cooperative throughout. (N.T., 26, 58, 1/23/2014.) The defense agreed that Ms. Gasden would have been a "powerful witness." (N.T., 56, 1/23/2014.)

During the incident, Mr. Talley and Ms. Gasden were the only two victims in the apartment at one point while Ms. Jones and Mr. Stancil left the property to go to the PNC Bank to withdraw money as demanded by the defendants. (N.T., 43-44, 47-48, 1/23/2014.) This lasted for about forty (40) minutes, and during this time Mr. Redding, another co-Defendant, was present in the apartment with them as well as Ms. Jones children. (N.T., 43-44, 48, 1/23/2014.) Detective Slaughter testified that the statements given by Mr. Stancil during the preliminary hearing corroborate the statements of other victims in the case regarding the "general overall events" of the incident, with the exception of the forty (40) minutes Mr. Stancil was no longer in the apartment. (N.T., 49-50, 51-52, 1/23/2014.) However, there were also instances in which Ms. Jones and Ms. Gasden were separated from each other, i.e., when they used the restroom or when Ms. Jones was permitted to check on her children. (N.T., 50-51, 1/23/2014). Further, the detective also testified that it was later disclosed that Mr. Stancil knew co-Defendant McNeil, and "there was some issue of loaning money to one another." (N.T., 50-51, 1/23/2014.)

Relevant pre-recorded prison phone calls that were placed by Defendant (and his co-Defendant McNeil) were played for this Court during the hearing. In one of the calls (call 9654) which took place on October 24, 2013 at approximately 12:12 p.m., Defendant is speaking with his mother. (N.T., 43, 1/23/2014, See Exh. C-2.)[18] During this conversation, the venire was discussed, and Defendant agreed with his mother that he "was guilty when them [sic] jurors first walked in there" and he entered the guilty plea because "he's guilty by the world anyway." (See Exh. C-2.) He also claimed that "they" made sure he was in a "lose-lose" situation based on the

---

[18] See Exhibit C-3 for a log of all calls placed by Defendants.

jury panel and the fact that the "detective's" testimony would have been believed by the judge and jury. (See Exh. C-2.)

Defendant admitted that he knew of Ms. Gasden's death shortly after it happened, as "there [was] a lot of people incarcerated with [him] that know Ms. Gasden." (N.T., 15-16, 2/20/2014.) He testified that he made a "terrible decision" by entering into the guilty plea and expressed regret in doing so. (N.T., 9-10, 2/20/2014.) Furthermore, he stated that "he did not kidnap those people." (N.T., 11, 2/20/2014.) In the recorded conversation that took place between he and his mother on October 24, 2013, Defendant claimed he informed his mother he felt he would not be convicted of all the crimes charged had the case gone to trial. (N.T., 11, 2/20/2014.) Finally, he claimed he was not paying attention during the guilty plea hearing and did not "mean to say at all that [he] was guilty of kidnapping." (N.T., 11-12, 2/20/2014.)

Ultimately, upon consideration of the totality of evidence presented at both hearings, we denied Defendant's motion to withdraw his guilty plea.

On April 21, 2014, we proceeded with sentencing. Following consideration of the facts, a pre-sentence investigation, the applicable mandatory minimum sentence(s) to be applied, as well as mitigating evidence presented by defense counsel, we sentenced Defendant to not less than ten (10) nor more than twenty (20) years' incarceration on Count 1, Burglary, as a mandatory second strike. On Count 3, Robbery- Threaten Immediate Serious Injury, we sentenced Defendant to not less than five (5) nor more than ten (10) years' incarceration pursuant to 42 Pa.C.S. § 9712 (sentences for offenses committed with firearms).[19] We ordered this sentence run concurrent to that on Count 1 because of Defendant's age, the fact that he was in violation of his parole and

---

[19] This was another mandatory minimum sentence imposed pursuant to 42 Pa.C.S. 9712 (Visibly Possessed Firearm). Defendant again indicated he understood the mandatory minimum sentences at this hearing. (N.T. Sent., 23.)

would likely face further penalty, and the fact that he plead guilty. (N.T. Sentencing, 26.)[20]

Further, on Count 7, Kidnapping for Ransom, Defendant was sentenced to a ten (10) year period of probation to be served consecutive to his parole on Count 1. Defendant received credit for time served from April 22, 2013 to the date of sentencing. No further penalties were imposed on the remaining counts.

A pro se Notice of Appeal to the Superior Court was filed on May 15, 2014. Throughout his guilty plea and sentencing hearings Defendant was, and still continues to be, represented by his court appointed attorney, Harry Cooper, Esquire.

Pursuant to this Court's Order of June 9, 2014, Defendant filed a pro se Statement of Matters Complained Of On Appeal on July 2, 2014. Mr. Cooper requested an extension to file a counseled Statement of Matters Complained Of On Appeal on July 14, 2014, which we granted for ten (10) days.[21] This statement was thereafter filed on July 23, 2014.[22]

## III.   MATTERS COMPLAINED OF ON APPEAL

In his Statement of Matters Complained Of On Appeal, Defendant raises the following issues, *verbatim*:

1) THE COURT ERRED IN DENYING THE DEFENDANT THE RIGHT TO WITHDRAW HIS GUILTY PLEA.

2) THE COURT'S DENIAL OF THE WITHDRAWAL OF THE GUILTY PLEA DENIED THE DEFENDANT HIS RIGHT TO A FAIR TRIAL.

3) DEFENDANT ALSO ASSERTS A CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL.

---

[20] For ease of reference, the Notes of Testimony from Defendant's sentencing hearing which occurred on April 21, 2014 will be referred to herein as "N.T. Sentencing."

[21] We granted this continuance based on the delay in the filing of numerous days of testimony ordered.

[22] Shortly after Defendant's counseled Statement of Matters Complained Of On Appeal was filed and following our writing of this opinion, we became aware that the Bucks County Clerk of Court's Office had not forwarded Defendant's Notice of Appeal to the Pennsylvania Superior Court for docketing. Therefore, before we could file this Opinion, we needed a Superior Court Docketing Statement.

## IV. ANALYSIS

### a. Motion to Withdraw Guilty Plea Claims

In Defendant's first and second matters complained of on appeal, Defendant asserts this Court erred in denying his motion to withdraw his guilty plea. It is well-settled that no absolute right to withdraw a guilty plea exists. Commonwealth v. Broaden, 980 A.2d 124, (Pa. Super. 2009) (citations omitted). In fact, Pennsylvania Rule of Criminal Procedure 591(A) (Pa.R.Crim.P. 591(A)) provides:

> At any time before the imposition of sentence, the court may, **in its discretion,** permit, upon motion of the defendant, or direct, *sua sponte,* the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty.

Pa.R.Crim.P. 591(A) (emphasis added). However, a motion to withdraw a guilty plea made prior to sentencing is to be liberally allowed where a defendant offers a "fair and just reason, provided there is no substantial prejudice to the Commonwealth." Commonwealth v. Walker, 26 A.3d 525, 529 (Pa. Super. 2011) (citations omitted).

A Defendant offers a "fair and just reason" by making a clear assertion of innocence which is neither contradictory nor conditional. Commonwealth v. Katonka, 33 A.3d 44, 48-50 (Pa. Super. 2011) (en banc). Accord Commonwealth v. Randolph, 718 A.2d 1242, 1244-46 (Pa. 1998).[23] However, the Superior Court held that:

> ...such an assertion does not divest a judge of discretion to weigh its sincerity according to the totality of circumstances known to the judge, and to deny the motion where, as here, the motion is founded not upon a sincere assertion...

---

[23] See also Commonwealth v. Elia, 83 A.3d 254, 264 (Pa. Super. 2013) (a fair and just reason for withdraw of guilty plea existed where defendant felt plea counsel "bullied" him into taking the plea and additionally where defendant believed the evidence was insufficient to convict him of the crimes charged); Commonwealth v. Pardo, 35 A.3d 1222, 1228 (Pa. Super. 2011) (a fair and just reason existed where defendant asserted his actual innocence and trial counsel informed him that he would be RRRI eligible when his prior record prevented him from being so).

Commonwealth v. Tennison, 969 A.2d 572, 573, 578 (Pa. Super. 2009). Accord Katonka, 33 A.3d at 48-50.

On at least one occasion, the Superior Court essentially held that the ulterior motives of a defendant in withdrawing his/her guilty plea may become relevant in making the determination of whether a fair and just reason exists warranting the withdrawal. Tennison, 969 A.2d at 572-78. In Tennison, the Court determined that a defendant did not properly assert innocence where he desired to delay sentencing in one case "in order to obtain a favorable sentence in another." Id. at 573, 577-78. In contrast, in Commonwealth v. Pardo, the Commonwealth asserted that Defendant was "merely play[ing] games with the system" because he did not like his recommended sentence, which the Superior Court discounted and later noted that permitting a trial court to deny a motion to withdraw guilty plea on that basis could open the door for every defendant who seeks to withdraw his pre-sentence guilty plea to be "accused of engaging in a dilatory tactic to avoid sentencing." 35 A.3d at 1228; Commonwealth v. Unangst, 71 A.3d 1017, 1022 (Pa. Super. 2013). [24] Accord Commonwealth v. Carrasquillo, 78 A.3d 1120, 1128 (Pa. Super. 2013) (en banc), allocator granted, 86 A.3d 830 (Pa. 2014).

First, Defendant's assertion of innocence may also fall short in terms of the majority of the crimes charged, as he initially expressed regret in entering the guilty plea and felt it was a "terrible decision," then later proclaimed that he withdrew his plea "because I know I did not kidnap these people."[25] (N.T., 9, 10-12, 2/20/2014.) Although he then later claimed he was not guilty of any of the charges, he was steadfast in his assertion that he did not want to plead to

---

[24] This case is unlike Pardo and Unangst which involved unsupported bald accusations of dilatory tactics that would weigh against the finding of a fair and just reason. Here, there is factual support in the record that Defendant possessed ulterior motives for the attempted withdrawal of his plea.

[25] In the recorded phone call 9654 from October 24, 2013, Defendant again asserted his innocence to the kidnapping charges only, stating: "I know I didn't kidnap these people." (See Exh. C-2.) Defendant says nothing about his guilt or innocence on the other charges for which he is now incarcerated.

kidnapping or have that on his criminal record. (N.T., 16-17, 2/20/2014.) During the hearing, we recognized that we solely accepted Defendant's assertion that he was innocent of the kidnapping charges. (N.T., 35-36, 2/20/2014.) As previously mentioned, the kidnapping charges regarding the minor victims were *nolle prossed* prior to the entry of his plea.

Second, in terms of the other crimes Defendant plead guilty to with the exception of the kidnapping charges, we preliminarily note that we are in no way passing on the credibility of Defendant's assertion of innocence. To the contrary, we question the sincerity of the assertion made and, ultimately, we are of the opinion that Defendant engaged in a contrived plot to withdraw his plea to all charges (except kidnapping) as a direct result of the knowledge that a vital witness since died and, obviously, became unavailable. Like in Tennison, permitting Defendant to do so would undermine our criminal justice system and, as a result, the circumstances in this case fall short of a fair and just reason to warrant the withdrawal of the guilty plea (in terms of the non-kidnapping related charges).

In passing, we decline to find a fair and just reason existed for withdrawal of Defendant's guilty plea based on Defendant's belief that the venire was not impartial, as there is simply no evidence supporting this belief. (See N.T., 31-32, 1/23/2014, See Exh. C-2.)

Regardless, even if a defendant provides a fair and just reason for withdrawal of his pre-sentence guilty plea, a motion to do so is properly denied where the Commonwealth would suffer substantial prejudice. Randolph, 718 A.2d at 1244. According to the Superior Court, prejudice in this context requires:

> ...a showing that due to events occurring after the plea was entered, the Commonwealth is placed in a worse position than it would have been had trial taken place as scheduled. This follows from the fact that the consequence of granting the motion is to put the parties back in the pre-trial stage of proceedings. This further follows from the logical proposition that prejudice cannot be equated with the

Commonwealth being made to do something it was already obligated to do prior to the entry of the plea.

Commonwealth v. Kirsch, 930 A.2d 1282, 1286 (Pa. Super. 2007).

Caselaw dictates that the Commonwealth suffers substantial prejudice where necessary witnesses become unavailable or reluctant to testify during the time period between the guilty plea and the filing of a motion to withdraw the guilty plea. Commonwealth v. Cole, 564 A.2d 203, 206 (Pa. Super. 1989), Commonwealth v. Carr, 543 A.2d 1232, 1234 (Pa. Super. 1988). In Cole, a defendant entered a guilty plea only after it became apparent that the Commonwealth was able to produce a witness from another jurisdiction. 564 A.2d at 206. The Superior Court found substantial prejudice because "to permit [defendant] to withdraw his guilty plea after the witness had returned to her home...would be to permit [defendant] to use his motion to withdraw for the improper purpose of gambling on the Commonwealth's ability to produce the witness for a second trial." Id. The Superior Court refused to permit defendant to play "fast and loose with the guilty plea process in order to delay prosecution or jeopardize the Commonwealth's ability to prove guilt." Id. Similarly, in Carr, the Court found substantial prejudice to the Commonwealth existed where:

> ...the delays occasioned by the plea and subsequent motions for continuances by appellant resulted in a shift in family sympathies from the child victim to appellant. Though undoubtedly available in a technical sense, the reluctance of family members to testify in a way which would cause the incarceration of appellant is evident, and would have significantly impaired the prosecution of this case. Moreover, the eight month delay would undoubtedly have dulled the five year old child victim's recall of events, even in the absence of the subtle influences resulting from the intra-familial nature of the assault.

543 A.2d at 1234.

In contrast, no substantial prejudice is suffered by the Commonwealth where a witnesses reluctance arose before the entrance of the guilty plea or there is no evidence that a witness's

recollection was negatively affected by any delay caused. Commonwealth v. Gordy, 73 A.3d 620, 627 (Pa. Super. 2013); Kirsch, 930 A.2d at 1286. In Kirsch, the trial court found the Commonwealth would not suffer substantial prejudice to warrant the denial of defendant's motion to withdraw his guilty plea where the victim had become a reluctant witness since defendant's arrest and the preliminary hearing. Id. at 1286-87. Because the victim had not become unavailable, there was no evidence that "her change of heart" occurred after the trial had been scheduled, and the fact that if her testimony did change she could have been impeached by any prior statements, the Superior Court found there was not sufficient prejudice to the Commonwealth. Id. Significantly, the Superior Court was quick to note that "this is not a situation where in the interim a witness has died or left the jurisdiction, or where key evidence has been inadvertently lost or destroyed." Id. at 1287. Additionally, in Gordy, there was a nine (9) or ten (10) year lapse between the time the crimes underlying defendant's conviction were committed and the entrance of a guilty plea and a two (2) month period between the entrance of the plea and defendant's motion to withdraw the plea. 73 A.3d at 627. The Superior Court found no substantial prejudice existed where the Commonwealth claimed that the lapse would affect witnesses' recollection because there was no evidence that this additional two (2) month time period in and of itself yielded a significant negative impact on the witnesses' ability to recall the incident. Id. at 626-27. Furthermore, the Superior Court found the record was devoid of any facts which would suggest lack of cooperation or unavailability of witnesses. Id. at 627-28.

In denying Defendant's motion to withdraw his guilty plea, our paramount concern was the fact that a witness had died after the entrance of the guilty plea and Defendant was aware of this fact. This would substantially prejudice the Commonwealth by denying it this important and

arguably vital testimony. In fact, following consideration of all evidence submitted during the hearings to withdraw Defendant's guilty plea, we concluded:

Ms. Gasden was noted by Detective Slaughter to have been very cooperative, she gave the detective and the DA total confidence in her testimony, she came to police headquarters three or four times, and also to the District Attorney's office, did all that voluntarily without subpoenas.

I do note that in *Carrasquillo* there was no evidence that any assertion of innocence was prompted by subterfuge or ulterior motive. The motive that stands out in this case that I know the defense – or at least Mr. Cooper has tried to persuade me to ignore, is that Ms. Gasden died after the defendants pled guilty and before they were to come in for sentencing, and that would have been early December of 2013, that certainly would have been a motive for defendants to withdraw their plea based on the fact that Ms. Gasden was just by her condition and her demeanor a credible witness. The Commonwealth, because of its decision not to call her at the preliminary hearing, which was justified, because the hearing went forward and all charges were held based on Mr. Stancil's testimony, but the Commonwealth did not call her and did not do a deposition I believe primarily because of her condition. It was a matter of whether or not they were going to bother this woman who was very sick, who was on dialysis, and who had cancer, and they decided not to do that, thinking all along that they had the testimony of other witnesses to this robbery.

Right now, however, what the Commonwealth is presented with is that the only witness they have who will testify is Ms. Jones, and the defense intends to challenge her credibility as a participant in this event and not as a victim. Losing Ms. Gasden is not only losing her as a witness, but as a witness who could justify inferentially the credibility of Ms. Jones. So, losing Ms. Gasden is a...large amount of substantial prejudice for the Commonwealth. I compare that to the minimal assertion of innocence and certainly to Mr. Smith's believable testimony that he just wanted the entire kidnapping to be withdrawn, and therefore I find that based on the overwhelming prejudice to be suffered by the Commonwealth in this case at trial, and the fact that on the day of trial the Commonwealth was fully prepared to go ahead with trial, and that the guilty plea was actually on the second day of trial, I therefore deny each defendant's application to withdraw their guilty plea.

(N.T., 38-40, 2/20/2014.)

Based on the foregoing, we believe we rightfully denied Defendant's Motion to

Withdraw his Guilty Plea, as the Commonwealth would have suffered substantial prejudice.

### b. Ineffective Assistance of Counsel

In Defendant's third error complained of on appeal, he asserts a blanket accusation of ineffective assistance of counsel. We note at the outset that Defendant's court appointed trial attorney (Mr. Cooper) also continues to represent Defendant on appeal.

Precedent dictates that, as a general rule, "a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002). Accord Commonwealth v. Yeomans, 24 A.3d 1044, 1048 (Pa. Super. 2011); Commonwealth v. Nischan, 928 A.2d 349, 356 (Pa. Super. 2007). In making this determination, the Pennsylvania Supreme Court took into consideration the following concerns: ineffectiveness claims often involve claims not readily apparent on the record; "demonstrating trial counsel's ineffectiveness will involve facts that are not available on the record," and "the trial court is in the best position to review claims related to trial counsel's error in the first instance as that is the court that observed first hand counsel's allegedly deficient performance." Id. at 737-38. Following this decision, the Pennsylvania Supreme Court later clarified that this rule "does not apply to claims of ineffective assistance of counsel where the intermediate appellate court on direct appeal has rendered a disposition on the merits." Commonwealth v. Grant, 821 A.2d 1246 (Pa. 2003).

However, the Pennsylvania Supreme Court essentially carved out a limited exception to this general rule in Commonwealth v. Bomar, 826 A.2d 831 (Pa. 2003). This exception applies when the factors which led to the Court's decision in Grant, as set forth above, are not present. Thus, in cases in which a petitioner's claims of ineffective assistance of counsel were properly raised and preserved in the trial court, they may be entertained, litigated, and disposed of on direct review. Bomar, 826 A.2d at 853-55. Specifically, defendant in this case was entitled to

judicial review of his ineffective assistance of counsel claims because the claims were raised in post-sentence motions and two (2) separate hearings were held on said motions, trial counsel testified at the hearings, and finally the trial court addressed the ineffectiveness claim in its opinion. Id. at 853.

The Bomar exception was later limited by Commonwealth v. Holmes, 79 A.3d 562 (2013). Here, the Pennsylvania Supreme Court scrutinized prior opinions examining the utilization of the exception provided by Bomar, see Commonwealth v. Wright, 961 A.2d 148-50, Commonwealth v. Rega, 933 A.2d at 1018, and Commonwealth v. Chmiel, 889 A.2d 501, 540 (Pa. 2005), and determined that this exception simply allows for an "additional, anticipatory collateral attack upon their judgments" that was not contemplated nor authorized by the General Assembly and further "subject to no review rationale beyond the discretion of the trial court." Holmes, 79 A.3d at 576. Accordingly, the Court reaffirmed Grant for its proposition that trial courts should not entertain claims of ineffectiveness upon post-verdict motions or direct appeal, absent the following extraordinary circumstances: (1) an extraordinary case where the trial court "determines that a claim (or claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted" and (2) situations in which an appellant raises multiple or prolix comprehensive claims of counsel's ineffectiveness upon good cause shown where there exists a knowing, voluntary, and express waiver of PCRA review. Id. at 576-80.

We find that neither extraordinary circumstance exists in this case, and without evidentiary support for this ineffective assistance of counsel claim we are unable to address this unsupported allegation.

Defendant attempts to set forth the reasoning for his claim of ineffective assistance of counsel in pro se filings including, most importantly, his pro se 1925(b) statement filed on July 1, 2014. However, it is well-settled that "there is no right to hybrid representation either at trial or on appeal." Commonwealth v. Jette, 23 A.2d 1032, 1035 (Pa. 2011), citing Commonwealth v. Ellis, 626 A.2d 1137 (1993). See Pa.R.A.P. 3304. Therefore, we are unable to address this claim and the Bucks County Clerk of Courts office rightfully forwarded all pro se filings to Defendant's attorney of record, Mr. Harry Cooper, pursuant to Pennsylvania Rules of Criminal Procedure (Pa.R.Crim.P.) 576(A)(4).

## V.    CONCLUSION

The foregoing represents this Court's opinion regarding Defendant's appeal from this Court's denial of his motion to withdraw his guilty plea and judgment of sentence.

BY THE COURT:

Date: 9/5/2014

ALBERT J. CEPPARULO, JUDGE

**COMMONWEALTH OF PENNSYLVANIA VS. DAESEAN SMITH**
**No.  CP-09-CR-0004021-2013**
**2318 EDA 2014**

**Copies Sent To:**

Harry J. Cooper, Esquire
HARRY J. COOPER, P.C.
P. O. Box 545
Chalfont, PA 18914-0545
*Attorney for Appellant/Defendant*

Alan J. Garabedian, DDA
Office of the Bucks County District Attorney
BUCKS COUNTY COURTHOUSE
55 East Court Street, 4th Floor
Doylestown, PA 18901
*Attorney for Appellee/Commonwealth*

Janette Livezey,
Managing Editor
LAW REPORTER
Bucks County Bar Association
135 East State Street
Doylestown, PA 18901

Barbara A. Morris,
Law Library
BUCKS COUNTY COURTHOUSE
55 East Court Street, 1st Floor
Doylestown, PA 18901